USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/8/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

KEVIN ANTHONY REID,                                :      REPORT AND
                                                   :      RECOMMENDATION
                            Plaintiff,             :
                                                   :      12 Civ. 7436 (PAC) (JLC)
            - against-                             :
                                                   :
TOYOTA MOTOR CREDIT CORP., et al.,                 :
                                                   :
                            Defendants.            :
--------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Paul A. Crotty, United States District Judge:**

Pro se Plaintiff Kevin Reid ("Reid") brings this case against Toyota Motor Credit

Corporation and Toyota Motor Leasing ("Toyota") and Payback Repo ("Payback Repo")

(collectively, "Defendants"), alleging that Defendants' repossession of his car violated his civil

rights. Toyota moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim on which relief may be granted. For the reasons

set forth below, I recommend that Toyota's motion be granted and the Amended Complaint be

dismissed as to both Toyota and Payback Repo.

## I.    BACKGROUND

### A.    Facts[1]

On January 12, 2011, Reid entered into an agreement to lease a 2011 Toyota Camry. See

Declaration of Casey D. Laffey [in Support of Toyota's Motion to Dismiss the Amended

Complaint] ("Laffey Decl."), Ex. B (lease agreement) (Dkt. No. 13); Am. Compl., at "Affidavit

---

[1]      The relevant facts are taken from Reid's Amended Complaint for Damages [and] Civil
Rights Violations, filed November 7, 2012 ("Amended Complaint" or "Am. Compl.") (Dkt. No.
10) and are accepted as true for the purposes of this motion to dismiss. In addition, I cite to two
documents submitted by Toyota, which are properly considered on this motion, as discussed
infra.

of Interest of Kevin A Reid," dated August 22, 2012 ("Affidavit of Interest"), ¶ 1.[2]  In April

2012, Reid expressed an interest in buying out the lease, and at Reid's request, Toyota sent him

paperwork and instructions for processing the purchase of the Camry, with a quoted payoff

amount of $24,868.32.  See Am. Compl., at Affidavit of Interest ¶¶ 1, 4; see also Am. Compl., at

letter from Toyota Financial Services to Reid, dated April 3, 2012.  Reid then sent Toyota a

check in the amount of $24,868.32.  See Am. Compl., at photocopy of check, dated April 4,

2012.  However, on the back of the check, Reid wrote "NOT FOR DEPOSIT, EFT ONLY," id.,

which he contends transformed the check into an "Electronic Funds Transfer" ("EFT")

instrument, which Toyota "may have evidently failed to process correctly."  Am. Compl., at

letter from Reid to "Criminal Supervisor" at Toyota Financial Services, dated August 1, 2012, at

1 (version notarized Aug. 4, 2012) ("Reid's August 4 Letter").

    Toyota attempted to deposit the check, but a photocopy of the processed check submitted

by Toyota indicates that it was returned by the bank because the account on which it was drawn

had been closed.  See Laffey Decl. Ex. D.  Meanwhile, after mailing the check to Toyota, Reid

apparently stopped making payments on the lease and informed Toyota by letter that his

submission of the "EFT instrument . . . effectively discharged" his debt on the Camry such that

he had "no further obligation . . . to respond to Toyota Financial Services."  Am. Compl., at letter

from Reid to Toyota Financial Services, dated July 5, 2012 ("Reid's July 5 Letter").  In a

subsequent letter to Toyota, Reid asserted that "[b]ecause the original untouched instrument,

E.F.T., was not returned to me within the time limits and manner required for such instruments,

---

[2]     Because Reid did not organize the documents attached to his Amended Complaint with
exhibits or page numbers, I cite to such documents with the designation "Am. Compl., at"
followed by a description of the document and its date.

th[e] instrument has been lawfully accepted and/or transacted and . . . the account has been settled[.]" Am. Compl., at Reid's August 4 Letter, at 2.

On July 16, 2012, Reid's car was repossessed. Am. Compl. § III ¶¶ 1-8; Am. Compl., at "Repossession Notification," dated August 13, 2012 ("Repossession Notification").[3] According to Reid, four men approached him at approximately 11:30 p.m., claiming they "worked for the dealer" and demanding the keys to his car in a very "demanding," "threatening," and "aggressive manner[.]" Am. Compl. § III ¶¶ 1, 4, 8. The men possessed "[n]o lawful warrant or papers," but Reid alleges that he felt "threatened for his life" and gave his keys to the men, who left with the Camry. Id. ¶¶ 5, 8. The next day, Reid reported to the police that his car had been stolen. Id. ¶¶ 9-11. Reid was subsequently informed that his Camry had been repossessed by Payback Repo and was being stored at a lot in Oceanside, New York. Id. ¶¶ 15, 18, 23; see also Am. Compl., at Repossession Notification.

**B.    Procedural Background**

On October 3, 2012, Reid filed this action seeking compensatory and punitive damages under various federal civil rights laws based on Defendants' repossession of his car. (Dkt. No. 1). On November 7, 2012, Reid filed an Amended Complaint. (Dkt. No. 10). Toyota entered an appearance through counsel, and on January 7, 2013, moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See Notice of Motion, dated January 7, 2013 (Dkt. No. 12); Memorandum of Law of Defendant Toyota Motor Credit Corporation in Support of Its Motion to Dismiss the Second [sic] Amended Complaint, dated January 7, 2013

---

[3]     The Repossession Notification states that the car was recovered on July 20, not July 16. The precise date is not important for purposes of this motion.

("Def. Mem.") (Dkt. No. 14).[4]  On January 15, 2013, the Court held an initial case management conference at which it raised the possibility of construing Reid's Amended Complaint to allege a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, in addition to the alleged civil rights claims.  See Order, dated January 15, 2013 (Dkt. No. 16). Toyota then filed supplemental papers addressing the viability of Reid's claims under the FDCPA.  See Supplemental Memorandum of Law of Defendant Toyota Motor Credit Corporation in Support of Its Motion to Dismiss the Second [sic] Amended Complaint, dated January 29, 2013 ("Def. Supp. Mem.") (Dkt. No. 18).  Reid filed opposition papers on March 1, 2013.  See Affidavit in Response to Defendant's Motion to Dismiss ("Pl. Opp.") (Dkt. No. 19). On March 15, 2013, Toyota filed a reply.  See Reply Memorandum of Law of Defendant Toyota Motor Credit Corporation in Further Support of Its Motion to Dismiss the Second [sic] Amended Complaint, dated March 15, 2013 ("Def. Reply") (Dkt. No. 20).  Payback Repo has not appeared in the lawsuit or otherwise responded to the Amended Complaint.  The case has been referred to me for general pretrial supervision and a report and recommendation regarding any dispositive motions.  (Dkt. No. 4).

## II.    DISCUSSION

### A.    Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

---

[4]    All of Toyota's moving papers incorrectly refer to Reid's Amended Complaint as a "Second Amended Complaint."

4

possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "'A pleading that offers mere labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Cepeda v. Bloomberg, No. 11 Civ. 2914 (WHP), 2012 WL 75424, at *1 (S.D.N.Y. Jan. 4, 2012) (quoting Iqbal, 556 U.S. at 678). Instead, the plaintiff must set forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." Mayor & City Council of Baltimore v. Citigroup, Inc., 709 F.3d 129, 135 (2d Cir. 2013) (quoting Twombly, 550 U.S. at 556) (quotation marks, emphasis, and brackets omitted).

In considering a motion to dismiss, the court accepts the factual allegations in the complaint "as true and draw[s] every reasonable inference from those facts in the plaintiff's favor," but "give[s] no effect at all to 'legal conclusions couched as factual allegations.'" Id. (citing Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)). "'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2000) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Id. at 153 (quoting Int'l Audiotext Network, Inc., 62 F.3d at 72).

A pro se complaint, such as Reid's, is "held to less stringent standards than pleadings drafted by attorneys, and the court must read [such a] complaint liberally and interpret it as raising the strongest arguments it suggests." Guerrero v. FJC Sec. Servs. Inc., No. 10 Civ. 9027 (JPO), 2012 WL 2053535, at *2 (S.D.N.Y. June 5, 2012) (citation omitted). Nevertheless, "pro

se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Pahuja v. Am. Univ. of Antigua, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *1 (S.D.N.Y. Dec. 18, 2012) (citing Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). Furthermore, a court may not "read into pro se submissions claims that are not 'consistent' with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not 'suggest[.]'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citing Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).

**B.**    **Materials Considered in Connection With This Motion to Dismiss**

In connection with its motion to dismiss, Toyota asks the Court to consider several documents external to Reid's Amended Complaint. See generally Laffey Decl. Exs. A-G. The documents proffered by Toyota include a copy of the signed lease agreement between Reid and Toyota, Laffey Decl. Ex. B, and a photocopy of Reid's processed check, which indicates that the check did not clear because it was drawn on a closed bank account. See Laffey Decl. Ex. D.[5] Toyota contends these materials may be considered without converting the motion into one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because Reid relied on such documents in bringing his case, and because they are "central to the allegations contained in the [Amended] Complaint." Def. Mem. at 1 n.1.

The lease agreement provides that Toyota had the right to repossess the Camry in the event Reid defaulted on his payment obligations. See Laffey Decl. Ex. B § 29. It therefore is

---

[5]    Exhibits A, C, and E to the Laffey Declaration are duplicative of materials in Reid's Amended Complaint and thus may be considered as part of Reid's pleading. Exhibits F and G consist of a May 21, 2012 letter from Toyota's fraud department to Reid, and a July 24, 2012 repossession notice to Reid. Because I conclude that the Court may dismiss Reid's Amended Complaint without relying on these documents, I do not reach whether they may be considered as well.

"integral" to Reid's claim that Toyota did not have the right to repossess his vehicle, and may properly be considered here. Cf. Interpharm, Inc. v. Wells Fargo Bank, N.A., 655 F.3d 136, 141 (2d Cir. 2011) (considering release agreement in connection with motion to dismiss after finding it "integral" to plaintiff's claims) (citing Chambers, 282 F.3d at 152-54)); see also Stiegmeier v. Nw. Growth Corp., No. 00 Civ. 6824 (DLC), 2000 WL 1670931, at *2 (S.D.N.Y. Nov. 6, 2000) (considering settlement agreement as "integral" to plaintiff's claims).

With respect to the processed check, the Amended Complaint repeatedly refers to the "EFT instrument" Reid sent to Toyota, and relies heavily upon the effect of that instrument as a basis for Reid's conclusion that his debt to Toyota was "discharged" such that the repossession was improper. See, e.g., Am. Compl., at Reid's July 5 Letter ("Since you have not returned the . . . [EFT] instrument[,] . . . you have effectively discharged the associated debt in this matter."); Am. Compl., at Reid's August 4 Letter, at 2 ("[T]he Electronic Funds Transfer (E.F.T.) instrument directed to Toyota . . . was lawfully and properly submitted, so as to set-off and discharge the debt associated with this specific account."). In fact, Reid attached an identical photocopy of the check to his Amended Complaint as proof that his debt was "discharged," except that Reid's photocopy reflects the check before Toyota unsuccessfully attempted to deposit it. See Am. Compl., at photocopy of check, dated April 4, 2012. Therefore, the processed check is both incorporated by reference in the Amended Complaint and "integral" to Reid's claims such that it may be considered here without converting Toyota's motion into one for summary judgment. See Chambers, 282 F.3d at 152-53.[6]

---

[6] Even if the Court converted this motion to one for summary judgment pursuant to Rule 56, Reid was given notice that the Court might do so and an opportunity to provide the Court with additional materials. See Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings, dated January 17, 2013 (Dkt. No. 17). Despite such

**C.     The Amended Complaint Fails to State a Federal Cause of Action**

1.     <u>Reid Fails to State a Claim Under the Civil Rights Laws</u>

The Amended Complaint purports to bring claims under 42 U.S.C. Sections 1983, 1985,

1986, and 1988 for asserted violations of Reid's rights under the Fourth, Fifth, Eighth, and

Fourteenth Amendments of the United States Constitution.  Am. Compl. § I ¶ 1 & Federal

Causes of Action ¶¶ 30, 32-33.  "Section 1983 provides a cause of action against any person who

deprives an individual of federally guaranteed rights 'under color' of state law."  <u>Filarsky v.</u>

<u>Delia</u>, 132 S. Ct. 1657, 1661 (2012) (citing 42 U.S.C. § 1983).  However, "'[b]ecause the United

States Constitution regulates only the Government, not private parties, a litigant claiming [under

Section 1983] that his constitutional rights have been violated must first establish that the

challenged conduct constitutes 'state action.'"  <u>Ciambriello v. Cnty of Nassau</u>,  292 F.3d 307,

323 (2d Cir. 2002) (quoting <u>United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen</u>

<u>& Helpers of Am.</u>, 941 F.2d 1292, 1295-96 (2d Cir. 1991)); <u>see also</u> <u>Wellings-Crispin v.</u>

<u>Compitello</u>, 120 F. App'x 885, 886 (2d Cir. 2005) ("[I]t is well established that an action under

42 U.S.C. § 1983 must be based on some state action.") (citation omitted).  Private actors do not

engage in "state action" unless they are "willful participant[s] in joint activities with the State or

its agents."  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970) (citing <u>United States v.</u>

<u>Price</u>, 383 U.S. 787, 794 (1966) (quotation marks omitted)).  As Toyota and Payback Repo are

both private entities, and are not alleged to have participated in any unconstitutional action by the

State or its agents, the Amended Complaint does not state a claim under Section 1983.

Reid also does not state a claim under Sections 1985 or 1986.  Although private actors

may be liable under Section 1985 for conspiracy to deprive others of civil rights, Section 1985 is

---

notice and opportunity, Reid did not challenge the validity of any of the documents submitted by
Toyota.

not a "general federal tort law" and does not reach all "conspiratorially tortious interferences with the rights of others." Spencer v. Casavilla, 903 F.2d 171, 174-75 (2d Cir. 1990) (citing Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)). The first two subsections of Section 1985 pertain to conspiracies to prevent federal officers from performing their duties and conspiracies to intimidate witnesses or jurors. See 42 U.S.C. § 1985(1)-(2). These provisions are not implicated in any way by Reid's claim that his Camry was wrongfully repossessed. Section 1985(3) is arguably broader, prohibiting, as relevant here, conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. 1985(3). However, "[t]o make out a claim under § 1985(3), a plaintiff must allege a conspiracy 'motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Harrison v. Lutheran Med. Ctr., 468 F. App'x 33, 37 (2d Cir. 2012) (citing United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 828-29 (1983)). The Amended Complaint, even liberally construed, does not allege that Defendants were motivated by any racial or other class-based animus when they repossessed Reid's car. The "§ 1985 claim must therefore be dismissed, and, accordingly, [the] § 1986 claim as well." Id. (citing Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) ("[A] § 1986 claim is contingent on a valid § 1985 claim.")).

Finally, Reid does not state a claim under 42 U.S.C. § 1988. "Section 1988 provides that in a federal civil rights action, 'the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.'" Valley Disposal Inc. v. Cent. Vermont Solid Waste Mgmt. Dist., 113 F.3d 357, 361 (2d Cir. 1997) (citing 42 U.S.C. § 1988(b)). However, Section 1988(b) does not create an independent cause of action. See 42 U.S.C. § 1988(b); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 701 n.66 (1978) ("42 U.S.C. § 1988 cannot

9

be used to create a federal cause of action where § 1983 does not otherwise provide one") (citing Moor v. Cnty of Alameda, 411 U.S. 693, 703-04 (1973)); Weiss v. Violet Realty, Inc., 160 F. App'x 119, 120 (2d Cir. 2005) ("§ 1988 does not provide an independent cause of action") (citing Valley Disposal, Inc., 71 F.3d at 1057). "Section 1988 also provides that where there are gaps in federal law with respect to the availability of suitable remedies for civil rights violations, the courts should look to state law insofar as it is not inconsistent with federal law." Valley Disposal Inc., 113 F.3d at 362 (citing 42 U.S.C. § 1988(a)). However, Reid contends—at most—that two private entities conspired to take his property. As discussed, this does not state a civil rights claim, and therefore, Section 1988(a) is inapplicable. See Arafet v. Kousouros, No. 07–CV–1916 (JS) (ETB), 2009 WL 4891956, at *2 (E.D.N.Y. Dec. 14, 2009) ("Plaintiff has not alleged a civil rights violation, and therefore Section 1988 is not applicable"). Accordingly, Reid does not state a claim under the foregoing civil rights laws.

### 2. Reid Fails to State a Claim Under the FDCPA

I also consider Reid's Amended Complaint under the FDCPA, 15 U.S.C. §§ 1692-1692p, even though Reid has not specifically asserted the FDCPA as a basis for relief. See, e.g., Griffin v. Key Bank of New York, No. 95-CV-202 (RSP) (GJD), 1996 WL 191975, at *2 (N.D.N.Y. Apr. 15, 1996) (court "may not dismiss based solely on [pro se plaintiff's] failure to set forth facts that support the theory on which he intends to proceed" but instead "must scrutinize the complaint to determine if the allegations provide for relief under any possible theory") (citation omitted). The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person," and from using "any false, deceptive, or misleading representation or means" in connection with the collection of any debt.

10

15 U.S.C. §§ 1692d, 1692e.  The FDCPA also prohibits the use of "unfair or unconscionable

means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

However, "[t]he FDCPA applies only to the actions of 'debt collectors.'" Plummer v.

Gordon, 193 F. Supp. 2d 460, 463 (D. Conn. 2002); see also Suquilanda v. Cohen & Slamowitz,

LLP, 10 Civ. 5868 (PKC), 2011 WL 4344044, at *3 (S.D.N.Y. Sept. 8, 2011) (threshold

requirement of FDCPA claim is that defendant is a "debt collector").[7]  The term "debt collector"

is defined under the FDCPA as a person who, among other requirements, is engaged in any

"business the principal purpose of which is the collection of any debts, or who regularly collects

or attempts to collect . . . debts owed or due . . . another." 15 U.S.C. § 1692a(6).  By contrast,

with one exception not applicable here, "'creditors' are not considered 'debt collectors' under

[the FDCPA] and [its] provisions . . . do not apply to them." Masudi v. Ford Motor Credit Co.,

No. 07-CV-1082 (CBA) (LB), 2008 WL 2944643, at *3 (E.D.N.Y. July 31, 2008) (citing

Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998)); see also Griffin, 1996

WL 191975, at *3 ("With one exception not applicable here, actual creditors are not debt

collectors within the meaning of the FDCPA.") (citations omitted).  A "creditor" is defined as

"'any person who offers or extends credit creating a debt or to whom a debt is owed,'" except to

the extent the person "'receives an assignment or transfer of a debt in default solely for the

purpose of facilitating collection of such debt for another.'" Masudi, 2008 WL 2944643, at *3

(citing 15 U.S.C. § 1692a(4)).  A "creditor" only falls within the definition of a "debt collector"

if, "in the process of collecting his own debts, [the creditor] uses any name other than his own

which would indicate that a third person is collecting or attempting to collect such debts." 15

U.S.C. 1692a(6).

---

[7]     There is an exception to this rule under 15 U.S.C. § 1692j, which is not applicable here.

Toyota argues that it is not a proper defendant under the FDCPA because it is Reid's "creditor" and not a "debt collector." See Def. Supp. Mem. at 2-3. I agree. Reid's Amended Complaint makes plain that Toyota is not in the principal business of debt collection, but was merely attempting to collect its own debt in its own name when it repossessed (or arranged for Payback Repo to repossess) the Camry. Reid also concedes in his opposition papers that his debt was owed to Toyota (rather than to a third party), which makes Toyota his creditor. See Pl. Opp. at 1 ("I, Kevin Anthony Reid, tendered [the EFT] to Toyota Motor Credit Corporation to settle this debt [with] Toyota Motor Credit Corporation[.]") (emphasis added).[8] Further, Reid does not allege that Toyota used the name of a third party in connection with the repossession so as to fall within the narrow category of "creditors" who are also considered "debt collectors." See 15 U.S.C. § 1692a(6). In fact, Reid admits that the men who repossessed his car informed him that "they worked for the dealer[.]" Am. Compl. § III ¶ 4. As such, Reid does not state a claim against Toyota under the FDCPA because Toyota is his creditor, not a debt collector. See Masudi, 2008 WL 2944643, at *3 (dismissing FDCPA claim where complaint did "not allege that Ford Motor Credit attempted to collect any debt 'owed or due or asserted to be owed or due to another'") (citing 15 U.S.C. § 1692(a)(6)); Griffin, 1996 WL 191975, at *3 (dismissing FDCPA claim where complaint established that defendant bank was creditor, not debt collector).

Reid also fails to state any claim against Payback Repo under the FDCPA. "For most provisions of the FDCPA, repossession agencies are not considered 'debt collectors.'" Durandisse v. U.S. Auto Task Force, No. 06 Civ. 2463 (DC), 2009 WL 2337133, at *3 (S.D.N.Y. July 30, 2009) (citing Jordan v. Kent Recovery Servs., Inc., 731 F. Supp. 652, 656-58

---

[8]    Elsewhere in his opposition papers, Reid asserts that because Toyota retained a security interest in his car, it was merely a "servicer" of his debt, and therefore a "third party debt collector," Pl. Opp. at 3, but he offers no authority for such assertion, and I am not aware of any.

(D. Del. 1990)).  However, for the purposes of Section 1692f(6) of the FDCPA, the term "debt collector" is defined more broadly and includes an entity whose principal business is the "enforcement of security interests."  Id.; see also 15 U.S.C. § 1692a(6).  Section 1692f(6) prohibits "nonjudicial action to effect dispossession . . . of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f(6)(A).  Thus, a repossession company such as Payback Repo may only be liable under Section 1692f(6) if it repossesses property without the "present right" to do so through "an enforceable security interest."  15 U.S.C. § 1692f(6)(A); Durandisse, 2009 WL 2337133, at *3.

Here, the lease agreement gave Toyota an enforceable security interest in the Camry and the right to repossess it in the event Reid defaulted on the lease.  See Laffey Decl. Ex. B § 29(ii) (lease agreement) ("If you are in default we may do any of the following . . . take possession of the Vehicle from your property or elsewhere, in any manner not prohibited by law.").  That right became a "present right" when Reid sent Toyota a check associated with a closed bank account, Laffey Decl. Ex. D, and thereafter asserted he had no further obligation to make payments on the lease.  See Am. Compl., at Reid's July 5 Letter.  Against this factual backdrop, Reid proffers only conclusory and unsupported assertions that his debt was "discharged" due to his use of the words "NOT FOR DEPOSIT, EFT ONLY" on the check.  As discussed, "legal conclusions couched as factual allegations" are insufficient to survive a motion to dismiss under Rule 12(b)(6).  Mayor & City Council of Baltimore, 709 F.3d at 135.  Accordingly, Reid has not plausibly alleged that Payback Repo violated Section 1692f(6).

In sum, the Amended Complaint does not state a claim against either Toyota or Payback Repo under the FDCPA.[9]

3.    Reid Fails to State Any Other Federal Cause of Action

Finally, in his opposition papers, Reid proffers several additional authorities in support of his claims, including the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; and the Truth in Lending Regulations ("Regulation Z"), codified at 12 C.F.R. Pt. 226. Pl. Opp. at 2. However, Reid does not explain how Defendants violated any of these laws, and the Amended Complaint does not suggest any way in which they are applicable here. The EFTA governs any transfer of funds "other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape." 15 U.S.C. § 1693a(7) (emphasis added). Reid wrote "EFT ONLY" on the check he sent to Toyota, but he does not explain how his use of such words transformed an ordinary check into a payment "initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape." Thus, Reid does not state a claim under the EFTA.

TILA and Regulation Z are also inapplicable to Reid's Amended Complaint. TILA was enacted to "promote consumers' 'informed use of credit' by requiring 'meaningful disclosure of credit terms[.]'" Chase Bank USA v. McCoy, 131 S. Ct. 871, 874 (2011) (citing 15 U.S.C. § 1601(a)). Regulation Z is a set of regulations promulgated by the Board of Governors of the Federal Reserve System pursuant to TILA, which identify specific information that must be

---

[9]    Even assuming, for the sake of argument, that the Amended Complaint did state a claim against Payback Repo under the FDCPA, it still would not state an FDCPA claim against Toyota because "creditors 'cannot be held responsible for the actions of any other entity merely based on vicarious liability'" under the FDCPA. Andresakis v. Capital One Bank (USA), No. 09 Civ. 8411 (DAB), 2011 WL 1097413, at *3 (S.D.N.Y. Mar. 23, 2011) (quoting Schuh v. Druckman & Sinel, LLP, 602 F. Supp. 2d 454, 463 (S.D.N.Y. 2009)).

disclosed in connection with the extension of credit to consumers. See id.; see generally 12 C.F.R. Pt. 226. Reid does not allege that Toyota failed to disclose any information to him (in connection with the extension of credit or otherwise). Reid takes issue only with Toyota's repossession of his vehicle, and not with any aspect of the original lease agreement. Therefore, Reid does not state a claim under TILA and Regulation Z.

Reid also cites several provisions of law relating to United States currency and the suspension of the gold standard, and contends that Toyota is "precluded . . . from demanding payment in any specific coin or currency of the United States." Pl. Opp. at 2.[10] Reid appears to be arguing that Toyota refused to accept lawful currency as payment for the Camry. However, even assuming the cited provisions confer a private right of action, the Amended Complaint does not plausibly suggest that Toyota refused to accept lawful currency. It indicates only that Reid sent Toyota a check drawn on a closed bank account labeled "EFT ONLY" and thereafter took the position that his debt was "effectively discharged." As discussed, Reid's belief that his debt was effectively discharged—despite sending Toyota a check associated with a closed bank account—does not state a cause of action, under the cited provisions or otherwise. See Sanford v. Robins Federal Credit Union, No. 5:12–CV–306 (MTT), 2012 WL 5875712, at *4 (M.D. Ga. Nov. 20, 2012) ("Frankly, it is not clear to this Court how the Plaintiff finds support for his claims [to have discharged his debt "by operation of law" through an EFT instrument] in the United States' suspension of the gold standard.").

---

[10]     In particular, Reid cites 31 U.S.C. §§ 5103, 5118; Article I, § 10 of the United States Constitution; and H.J. Res. 192, 73rd Cong. (1933), enacted by Pub. L. No. 73–10, 48 Stat. 112–13 (1933). Pl. Opp. at 2.

In conclusion, Reid's Amended Complaint does not state a cause of action under the civil rights laws, the FDCPA, the EFTA, the cited provisions pertaining to United States currency, or any other federal law of which I am aware.

## D.   To the Extent Reid Has Any State Law Claims, They Should Also Be Dismissed

In light of my determination that the Amended Complaint fails to state a cause of action under federal law, I do not consider whether Reid has alleged any claim against Toyota or Payback Repo under state law.  The only bases to exercise jurisdiction over such a claim would be diversity jurisdiction under 28 U.S.C. § 1332(a)(1), or supplemental jurisdiction under 28 U.S.C. § 1367.  There is not diversity jurisdiction in this case because Reid and Payback Repo are both citizens of New York State.  Am. Compl. § II ¶¶ 2, 5.  See McGowan v. Hoffmeister, No. 05 Civ. 2879 (HB), 2005 WL 1283579, at *2 (S.D.N.Y. June 1, 2005) (non-diverse corporate defendant defeated diversity jurisdiction even though such defendant had not appeared in lawsuit) (citing K.M.B. Warehouse Distrib., Inc. v. Walker Mfg. Co., 61 F.3d 123, 130 (2d Cir. 1995) ("[T]here must be complete diversity of citizenship between all plaintiffs and all defendants named in all claims in order for jurisdiction over any claim to be based upon diversity of citizenship.")).[11]

---

[11]    In addition, despite Reid's claim for $350,000 in compensatory damages and $356,000 in punitive damages, Am. Compl. ¶¶ 34(a)-(b), the gross capitalized cost of the Camry at the inception of the lease was only $30,870.82. Laffey Decl. Ex. B § 9(a).  Therefore, it is questionable that Reid could establish a "reasonable probability" that the value of his case exceeds the amount-in-controversy requirement of $75,000.  See Powell v. Johnson, Nos. 3:11–CV–1432, 3:11–CV–1471 (GTS) (DEP), 2012 WL 4052261, at *13 (N.D.N.Y. Jan. 9, 2012) ("'[I]f [the] court makes a face-of-the-complaint determination that the $75,000 amount in controversy cannot be recovered 'to a legal certainty,' the case is dismissed for lack of subject matter jurisdiction.'") (citing Hall v. Earthlink Network, Inc., 396 F.3d 500, 507 n.5 (2d Cir. 2005)).  Moreover, in response to the motion to dismiss, he seeks damages in the amount of $75,000, which does not satisfy the required jurisdictional amount.  Pl. Opp. at 3 (Prayer for Relief); 28 U.S.C. § 1332(a) ("district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000") (emphasis added).

Finally, the Court should decline to exercise supplemental jurisdiction over any state law claims that may be implicated by the Amended Complaint given that the "basis for retaining jurisdiction is weak when the federal claims are dismissed before trial." Plummer, 193 F. Supp. 2d at 465 (declining to exercise supplemental jurisdiction over state law claims after dismissing FDCPA claims) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

**E.     The Court Should Dismiss the Amended Complaint as to Both Defendants**

Based on the foregoing, I recommend the Court grant Toyota's motion and dismiss the Amended Complaint as to Toyota.  I also recommend the Court sua sponte dismiss the Amended Complaint as to Payback Repo.  Although Payback Repo has not appeared in this action, a "district court has the power to dismiss a complaint sua sponte for failure to state a claim,' so long as the plaintiff is given notice and 'an opportunity to be heard.'" Wachtler v. Cnty of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994) (citing Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980); Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991)).[12] Here, the Amended Complaint fails to state a federal cause of action against both Toyota and Payback Repo for largely the same reasons, and Reid was given notice of Toyota's motion and an opportunity to oppose it.[13]  Accordingly, the Court may also sua sponte dismiss Reid's claims against Payback

---

[12]     It does not appear that Payback Repo was ever served with the Amended Complaint, as there is no proof of service on the docket.  Even if Payback Repo had been served and could be considered to be in default, the Amended Complaint must state a valid cause of action against the defaulting party before a default is entered.  Kuruwa v. Meyers, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011); see generally City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("Indeed, we have recently suggested that, prior to entering default judgment, a district court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.") (quoting Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).  As discussed supra, Reid does not state a claim against Payback Repo, and so he would not be able to obtain a default judgment against it.

[13]     The only allegation unique to Payback Repo is Reid's contention that the men who took the Camry acted in a "threatening" and "aggressive" manner. Am. Compl. ¶ 8. Even if such

17

Repo. See id. (affirming sua sponte dismissal of claims against defendant who was served but did not appear in lawsuit or join in motion to dismiss where plaintiff had notice of other defendants' motion to dismiss); Hewett v. Leblang, No. 12 Civ. 1713 (PKC), 2012 WL 2820274, at *11 (S.D.N.Y. July 5, 2012) (granting motion to dismiss and simultaneously dismissing complaint sua sponte as to non-moving defendants).[14]

**F.   Leave to Replead**

Generally, a court should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal citations and quotation marks omitted).  An opportunity to amend is not required, however, where any amendment would be futile—where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." Id. (citation omitted); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 50 (2d Cir. 1991) ("Obviously, where a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend.") (citing Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198-99 (2d Cir. 1989)).  In this case, Reid has already amended his complaint once, and his Amended Complaint and other submissions, considered in conjunction with the lease agreement and the returned check submitted by Toyota, lead to the inevitable conclusion that Reid has no federal claim against Defendants, and any further amendment would be futile. See Sanford, 2012 WL 5875712, at *5 n.5 ("Given the

---

allegations were sufficiently particularized to satisfy federal pleading standards, I am not aware of any federal law that would support a cause of action based on such conduct.

[14]    Reid's Amended Complaint also named a "'John Doe', truck driver" and "Joe ID (JMBW)" as defendants. See Am. Compl. § II ¶¶ 3-4.  However, Reid never made any effort to identify or serve these parties, and his Amended Complaint does not state a cause of action against them for the same reasons it fails to state one against Toyota and Payback Repo. Accordingly, the Amended Complaint should also be dismissed sua sponte as to these parties.

Defendant's status as a private actor and the general frivolity of the claims asserted . . . any amendments to the Complaint related to these purported causes of action would be futile and non-curative."); see also Cuoco, 222 F.3d at 112 (affirming denial of leave to replead as futile). Accordingly, I recommend that the Court deny Reid leave to amend.

### III.   CONCLUSION

For the foregoing reasons, I recommend the Court dismiss Reid's Amended Complaint with prejudice as to all federal claims, but without prejudice to refiling any state law claims in state court.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Plaintiff does not have access to

cases cited herein that are reported on LexisNexis or Westlaw, he should request copies from

Defendant's counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Dated: New York, New York
      April 8, 2013

                                           JAMES L. COTT
                                         United States Magistrate Judge


**A copy of this Report & Recommendation has been sent by mail to:**

Kevin Anthony Reid
2766 Barnes Ave.
Apt. A9
Bronx, NY 10467